1

2

3

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 27, 2022

SEAN F. McAVOY, CLERK

4

5          UNITED STATES DISTRICT COURT

6          EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| 7   DARREN L.,[1] | No. 1:20-cv-03129-MKD |
| 8              Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR |
| 9   v. | SUMMARY JUDGMENT AND DENYING DEFENDANT'S |
| 10  KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL | MOTION FOR SUMMARY JUDGMENT |
| 11  SECURITY,[2] | **ECF Nos. 17, 22** |
| 12             Defendant. | |

13 ─────────────────

14  [1] To protect the privacy of plaintiffs in social security cases, the undersigned

15  identifies them by only their first names and the initial of their last names. *See*

16  LCivR 5.2(c).

17  [2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9,

18  2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo

19  Kijakazi is substituted for Andrew M. Saul as the defendant in this suit.  No further

20  action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER - 1

Before the Court are the parties' cross-motions for summary judgment.  ECF Nos. 17, 22.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, the Court grants Plaintiff's motion, ECF No. 17, and denies Defendant's motion, ECF No. 22.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

ORDER - 2

1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of

ORDER - 3

substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the

ORDER - 4

1 enumerated impairments, the Commissioner must find the claimant disabled and

2 award benefits.  20 C.F.R. § 404.1520(d).

3      If the severity of the claimant's impairment does not meet or exceed the

4 severity of the enumerated impairments, the Commissioner must pause to assess

5 the claimant's "residual functional capacity."  Residual functional capacity (RFC),

6 defined generally as the claimant's ability to perform physical and mental work

7 activities on a sustained basis despite his or her limitations, 20 C.F.R. §

8 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

9      At step four, the Commissioner considers whether, in view of the claimant's

10 RFC, the claimant is capable of performing work that he or she has performed in

11 the past (past relevant work).  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is

12 capable of performing past relevant work, the Commissioner must find that the

13 claimant is not disabled.  20 C.F.R. § 404.1520(f).  If the claimant is incapable of

14 performing such work, the analysis proceeds to step five.

15      At step five, the Commissioner considers whether, in view of the claimant's

16 RFC, the claimant is capable of performing other work in the national economy.

17 20 C.F.R. § 404.1520(a)(4)(v).  In making this determination, the Commissioner

18 must also consider vocational factors such as the claimant's age, education, and

19 past work experience.  *Id.*  If the claimant is capable of adjusting to other work, the

20 Commissioner must find that the claimant is not disabled.  20 C.F.R. §

ORDER - 5

404.1520(g)(1).  If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On July 2, 2018, Plaintiff applied for Title II disability insurance benefits alleging a disability onset date of January 8, 2018.  Tr. 15, 76, 218-26.  The application was denied initially and on reconsideration.  Tr. 107-13, 119-25. Plaintiff appeared before an administrative law judge (ALJ) on August 21, 2019. Tr. 30-75.  On September 13, 2019, the ALJ denied Plaintiff's claim.  Tr. 12-29.

At step one of the sequential evaluation process, the ALJ found Plaintiff, who meets the insured status requirements through December 31, 2022, has not engaged in substantial gainful activity since January 8, 2018, the alleged onset date.  Tr. 17.  At step two, the ALJ found that Plaintiff has the following severe impairments: asthma and obesity.  *Id*.

ORDER - 6

1    At step three, the ALJ found Plaintiff does not have an impairment or

2  combination of impairments that meets or medically equals the severity of a listed

3  impairment. Tr. 18. The ALJ then concluded that Plaintiff has the RFC to perform

4  light work with the following limitations:

5        [H]e can frequently handle and finger; and occasionally climb ramps
         and stairs, balance, stoop, kneel, crouch and crawl. He can
6        occasionally talk. [Plaintiff] can perform work in which concentrated
         exposure to hazards, extreme cold, heat, wetness, pulmonary irritants
7        [are] not present.

8  *Id.*

9        At step four, the ALJ found Plaintiff is unable to perform any past relevant

10  work, but that he has acquired transferable skills from his past relevant work. Tr.

11  22. At step five, the ALJ found that, considering Plaintiff's age, education, work

12  experience, RFC, and testimony from the vocational expert, there were jobs that

13  existed in significant numbers in the national economy that Plaintiff could perform,

14  such as merchant patroller, patrol conductor, and bailiff. Tr. 23. Therefore, the

15  ALJ concluded Plaintiff was not under a disability, as defined in the Social

16  Security Act, from the alleged onset date of January 8, 2018, through the date of

17  the decision. Tr. 24.

18        On June 17, 2020, the Appeals Council denied review of the ALJ's decision,

19  Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes

20  of judicial review. *See* 42 U.S.C. § 1383(c)(3).

ORDER - 7

1

**ISSUES**

2          Plaintiff seeks judicial review of the Commissioner's final decision denying

3    him disability insurance benefits under Title II of the Social Security Act.  Plaintiff

4    raises the following issues for review:

5          1.   Whether the ALJ properly evaluated Plaintiff's symptom claims;

6          2.   Whether the ALJ conducted a proper step-two analysis;

7          3.   Whether the ALJ properly evaluated the medical opinion evidence; and

8          4.   Whether the ALJ conducted a proper step-five analysis.

9    ECF No. 17 at 7.

10                              **DISCUSSION**

11   **A. Plaintiff's Symptom Claims**

12         Plaintiff contends the ALJ improperly rejected Plaintiff's symptom

13   complaints.  ECF No. 17 at 17-20.  An ALJ engages in a two-step analysis to

14   determine whether to discount a claimant's testimony regarding subjective

15   symptoms.  SSR 16–3p, 2016 WL 1119029, at *2.  "First, the ALJ must determine

16   whether there is objective medical evidence of an underlying impairment which

17   could reasonably be expected to produce the pain or other symptoms alleged."

18   *Molina*, 674 F.3d at 1112 (quotation marks omitted).  "The claimant is not required

19   to show that [the claimant's] impairment could reasonably be expected to cause the

20   severity of the symptom [the claimant] has alleged; [the claimant] need only show

ORDER - 8

that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has

received for relief of pain or other symptoms; 6) any measures other than treatment

an individual uses or has used to relieve pain or other symptoms; and 7) any other

factors concerning an individual's functional limitations and restrictions due to

pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §

404.1529(c).  The ALJ is instructed to "consider all of the evidence in an

individual's record," to "determine how symptoms limit ability to perform work-

related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

Here, the ALJ found that Plaintiff's medically determinable impairments

could reasonably be expected to cause the alleged symptoms, but that Plaintiff's

statements concerning the intensity, persistence, and limiting effects of his

symptoms were not entirely consistent with the evidence.  Tr. 19.

*1. Inconsistent with Objective Medical Evidence*

The ALJ found Plaintiff's symptom claims were inconsistent with the

objective medical evidence.  Tr. 19-20.  An ALJ may not discredit a claimant's

symptom testimony and deny benefits solely because the degree of the symptoms

alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261

F.3d 853, 856 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir.

1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400

F.3d 676, 680 (9th Cir. 2005).  However, the objective medical evidence is a

relevant factor, along with the medical source's information about the claimant's

ORDER - 10

pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2).

Here, the ALJ summarized the objective medical evidence. *See* Tr. 19-20. The ALJ noted that Plaintiff has a documented chronic pulmonary condition. Tr. 19 (citing Tr. 341). The ALJ noted a CT scan also showed abnormal enlargement of Plaintiff's left thyroid gland causing some impingement on the trachea. Tr. 19 (citing Tr. 391; *see also*, Tr. 355, 358, 584). The ALJ noted that Plaintiff reported significant shortness of breath with abnormal air quality, and that he was prescribed Advair and inhalers to help control his respiratory conditions. Tr. 19 (citing Tr. 438, 584). The ALJ acknowledged records showed Plaintiff presented to the ER in November 2018 with an asthma attack, concluding that he responded well to albuterol at that time. Tr. 19 (citing Tr. 617, 620).

The ALJ noted Plaintiff's normal pulmonary exam in February 2018, with normal pulmonary function testing at that time; and that his lungs showed mild restriction in total lung capacity, but his diffusing capacity was normal. Tr. 19 (citing Tr. 351). The ALJ noted Plaintiff's most recent spirometry testing was normal in October 2018. Tr. 19 (citing Tr. 586, 651). The ALJ also noted that Plaintiff had normal oxygen levels at office visits and a laryngoscopy procedure in August 2018 showed normal findings. Tr. 19 (citing Tr. 532, 554, 638). The ALJ further noted that Plaintiff had generally unremarkable respiratory exams. Tr. 19-

20 (citing Tr. 534, 725).  The ALJ noted Plaintiff's BMI of 48.9 as of April 2019.

Tr. 20 (citing Tr. 718).  The ALJ also noted that throughout the period of

adjudication, Plaintiff had generally unremarkable physical exams, with normal

gait, station, and motor strength.  Tr. 20 (citing Tr. 348, 372, 444).

The ALJ's interpretation that the objective evidence was inconsistent with

Plaintiff's complaints of disabling symptoms is rational and supported by

substantial evidence.  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190,

1198 (9th Cir. 2004) (recognizing that when evidence in the record is subject to

more than one rational interpretation, the court defers to the ALJ's finding).

The ALJ reasonably found that Plaintiff's symptom claims were inconsistent

with objective medical evidence.  If the ALJ had coupled the above finding with

another well-articulated reason, this could constitute clear and convincing reasons

to give less weight to Plaintiff's subjective symptoms complaints.  However, as

discussed *infra*, the ALJ failed to provide another reason supported by substantial

evidence.

*2. Inconsistent with Activities*

The ALJ noted that Plaintiff recently travelled and engaged in hobbies

including shooting, model making, reading and computer surfing.  Tr. 19.  An ALJ

may consider a claimant's activities that undermine reported symptoms.  *Rollins*,

261 F.3d at 857.  If a claimant can spend a substantial part of the day engaged in

ORDER - 12

pursuits involving the performance of exertional or nonexertional functions, the

ALJ may find these activities inconsistent with the reported disabling symptoms.

*Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Molina*, 674 F.3d at 1113.

"While a claimant need not vegetate in a dark room in order to be eligible for

benefits, the ALJ may discount a claimant's symptom claims when the claimant

reports participation in everyday activities indicating capacities that are

transferable to a work setting" or when activities "contradict claims of a totally

debilitating impairment." *Molina*, 674 F.3d at 1112-13.

Here, after listing some of Plaintiff's allegations, the ALJ noted "[h]owever,

[Plaintiff] recently went to Kentucky and did some driving and was able to sit in

the car between Washington and Kentucky." Tr. 19.  The ALJ noted "they did

mostly indoor activities and meals where there was air conditioning" and that

Plaintiff's hobbies include "shooting, model making, and more recently, reading

and computer surfing." *Id*.  However, the ALJ never again mentioned Plaintiff's

travel or hobbies, and she did not expressly rely on those factors to reject

Plaintiff's symptom reports. *See* Tr. 19-24.  These general findings are insufficient

to undermine Plaintiff's symptom claims.  It is well-established that a claimant

need not be "utterly incapacitated" to be eligible for benefits. *Fair*, 885 F.2d at

603.  The Court also cannot affirm the ALJ's credibility decision based on

ORDER - 13

1  evidence that the ALJ did not discuss.  *Connett v. Barnhart*, 340 F.3d 871, 874 (9th

2  Cir. 2003).

3       Here, while the ALJ mentions Plaintiff's one time travel and hobbies, these

4  facts are briefly noted without any accompanying discussion of their import on the

5  disability analysis.  *See* Tr. 19.  Even viewing the opinion as a whole, there is no

6  discussion or analysis of how Plaintiff's travel and hobbies factored into the ALJ's

7  rejection of Plaintiff's symptom reports.  *See* Tr. 17-24.  Furthermore, even if the

8  ALJ did rely on Plaintiff's travel and hobbies to reject his symptom reports, the

9  decision does not explain what symptoms were undermined by these activities, or

10 why.  *Id*.  At the hearing, Plaintiff testified that he did some driving on their trip,

11 but they also stopped frequently, and his wife did most of the driving.  Tr. 45.

12 While Plaintiff testified that he reads and uses a computer, he also testified he no

13 longer participates in shooting and model building as he did in the past due to his

14 symptoms, including sensitivity to fumes from glue and cleaning products, and that

15 on the advice of his pulmonologist he spends multiple hours a day reclining in his

16 chair with his head back to open his airways.  Tr. 46-47.  Without further

17 explanation of the ALJ's reasoning, a finding that Plaintiff's travel or hobbies was

18 inconsistent with his symptoms claims is not supported by substantial evidence.

19      Here, the Court cannot reasonably discern the ALJ's path regarding the

20 reliance on Plaintiff's travel and hobbies, if there was any.  *See Molina*, 674 F.3d at

1121 (citations omitted).  For these reasons, the ALJ's finding that Plaintiff's travel and hobbies were inconsistent with his symptom claims is not supported by substantial evidence.

Objective evidence cannot stand alone as a reason to reject symptom reports, and the ALJ's only other reason for rejective Plaintiff's symptom complaints is legally insufficient.  Here, the ALJ relies solely on Plaintiff's generally normal examination findings and test results as the basis to reject Plaintiff's symptom reports.  This is reversible error.  While medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects, ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins*, 261 F.3d at 856.  Further, in the absence of a clear and convincing reason to discount symptom reports, the limitations in a claimant's symptom reports must be made part of the RFC.  *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) ("[T]he ALJ failed to provide clear and convincing reasons for finding Lingenfelter's alleged pain and symptoms not credible, and therefore was required to include these limitations in his assessment of Lingenfelter's RFC.").

Because the ALJ's rejection of Plaintiff's symptom claims may not solely be based on the lack of supporting objective medical evidence, the ALJ is instructed to reevaluate Plaintiff's symptom testimony.  *See Rollins*, 261 F.3d at 857;

ORDER - 15

*Bunnell*, 947 F.2d at 346-47; *Fair*, 885 F.2d at 601.  Upon remand the ALJ shall

conduct a new sequential analysis, reevaluating Plaintiff's symptom claims and

their impact on each step of the sequential analysis.

**B. Step Two**

Plaintiff contends the ALJ erred by rejecting Plaintiff's severe impairments

as groundless at step two.  ECF No. 17 at 16.  At step two of the sequential

process, the ALJ must determine whether the claimant suffers from a "severe"

impairment, i.e., one that significantly limits her physical or mental ability to do

basic work activities.  20 C.F.R. § 404.1520(c).

To establish a severe impairment, the claimant must first demonstrate that

the impairment results from anatomical, physiological, or psychological

abnormalities that can be shown by medically acceptable clinical or laboratory

diagnostic techniques.  20 C.F.R. § 404.1521.  The claimant must establish the

existence of the physical or mental impairment through objective medical evidence

(*i.e.*, signs, laboratory findings, or both) from an acceptable medical source; the

medical impairment cannot be established by the claimant's statement of

symptoms, a diagnosis, or a medical opinion.  *Id.*

An impairment may be found to be not severe when "medical evidence

establishes only a slight abnormality or a combination of slight abnormalities

which would have no more than a minimal effect on an individual's ability to

1    work . . . ." Social Security Ruling (SSR) 85-28 at *3. Similarly, an impairment is

2    not severe if it does not significantly limit a claimant's physical or mental ability to

3    do basic work activities; which include walking, standing, sitting, lifting, pushing,

4    pulling, reaching, carrying, or handling; seeing, hearing, and speaking;

5    understanding, carrying out and remembering simple instructions; responding

6    appropriately to supervision, coworkers, and usual work situations; and dealing

7    with changes in a routine work setting. 20 C.F.R. § 404.1522; SSR 85-28.[3]

8        Step two is "a de minimus screening device [used] to dispose of groundless

9    claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). "Thus, applying

10   our normal standard of review to the requirements of step two, [the Court] must

11   determine whether the ALJ had substantial evidence to find that the medical

12   evidence clearly established that [Plaintiff] did not have a medically severe

13   impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687

14   (9th Cir. 2005).

15       Here, the ALJ found Plaintiff had the severe impairments of asthma and

16   obesity. Tr. 17. The ALJ additionally found that Plaintiff has a history of

17

18   _____

19   [3] The Supreme Court upheld the validity of the Commissioner's severity

20   regulation, as clarified in SSR 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54

     (1987).

ORDER - 17

1  hypertension and a diagnosis of carpal tunnel syndrome, but found those

2  impairments were non-severe because Plaintiff's hypertension did not require

3  treatment and his carpal tunnel syndrome had been "recently diagnosed and

4  addressed." Tr. 17-18.  Plaintiff contends the ALJ erred by failing to discuss

5  Plaintiff's thyroid impairments at step two, and in failing to properly account for

6  Plaintiff's dyspnea, chronic cough and carpal tunnel syndrome.  ECF No. 17 at 16.

7  Defendant contends the ALJ properly accounted for Plaintiff's impairments, and

8  that any error was harmless as the ALJ accounted for all severe and nonsevere

9  impairments in the RFC, and Plaintiff has failed to meet his burden of showing he

10  was prejudiced.  ECF No. 22 at 3-6.

11      As this case is being remanded for reconsideration of Plaintiff' symptom

12  claims, the ALJ shall also perform the sequential analysis anew including

13  reconsidering the step two analysis.

14  **C. Medical Opinions**

15      Plaintiff contends the ALJ erred in his consideration of the opinions of

16  Derek S. Weaver, D.O., and Tyrell Nielson, PAC.  ECF No. 17 at 9-15.

17      As an initial matter, for claims filed on or after March 27, 2017, new

18  regulations apply that change the framework for how an ALJ must evaluate

19  medical opinion evidence.  *Revisions to Rules Regarding the Evaluation of*

20  *Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20

ORDER - 18

C.F.R. § 404.1520c.  The new regulations provide that the ALJ will no longer

"give any specific evidentiary weight . . . to any medical opinion(s) . . ." *Revisions*

*to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §

404.1520c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of

all medical opinions or prior administrative medical findings from medical sources.

20 C.F.R. § 404.1520c(a) and (b).  The factors for evaluating the persuasiveness of

medical opinions and prior administrative medical findings include supportability,

consistency, relationship with the claimant (including length of the treatment,

frequency of examinations, purpose of the treatment, extent of the treatment, and

the existence of an examination), specialization, and "other factors that tend to

support or contradict a medical opinion or prior administrative medical finding"

(including, but not limited to, "evidence showing a medical source has familiarity

with the other evidence in the claim or an understanding of our disability

program's policies and evidentiary requirements").  20 C.F.R. § 404.1520c(c)(1)-

(5).

      Supportability and consistency are the most important factors, and therefore

the ALJ is required to explain how both factors were considered.  20 C.F.R. §

404.1520c(b)(2).  Supportability and consistency are explained in the regulations:

> (1) *Supportability.* The more relevant the objective medical evidence
> and supporting explanations presented by a medical source are to
> support his or her medical opinion(s) or prior administrative medical

ORDER - 19

finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2).  The ALJ may, but is not required to, explain how the other factors were considered.  20 C.F.R. § 404.1520c(b)(2).  However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . .  and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. § 404.1520c(b)(3).

The Ninth Circuit recently addressed the issue of whether the changes to the regulations displace the longstanding case law requiring an ALJ to provide specific and legitimate reasons to reject an examining provider's opinion.  *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).  The Court held that the new regulations eliminate any hierarchy of medical opinions, and the specific and legitimate standard no longer applies.  *Id.* at 788-89, 792.  The Court reasoned the "relationship factors" remain relevant under the new regulations, and thus the ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical

ORDER - 20

1    source has performed or ordered from specialists, and whether the medical source

2    has examined the claimant or merely reviewed the claimant's records.  *Id.* at 792.

3    However, the ALJ is not required to make specific findings regarding the

4    relationship factors.  *Id.*  Even under the new regulations, an ALJ must provide an

5    explanation supported by substantial evidence when rejecting an examining or

6    treating doctor's opinion as unsupported or inconsistent.  *Id.*

7         There are multiple opinions from Dr. Weaver and Mr. Nielson during the

8    period at issue.  Tr. 341-43, 545-50, 589-97, 601, 691-98, 709-11.  In May 2018,

9    Dr. Weaver indicated Plaintiff continued to suffer from chronic pulmonary disease

10   that had not been definitely diagnosed.  Tr. 341.  He explained Plaintiff had

11   surgery to correct a laryngeal dysfunction, but still had poor pulmonary function.

12   *Id*.  Dr. Weaver opined Plaintiff was unable to return to work "until he . . . has a

13   diagnosis, and then once he receives treatment for his pulmonary dysfunction."  *Id*.

14   Dr. Weaver estimated return to work in January 2019 but noted "this date is subject

15   to change once diagnosis is made" and that Plaintiff would return to work "once he

16   is able."  *Id*.  In September 2018, Dr. Weaver's opinion included restrictions that

17   Plaintiff was limited in his ability to climb "due to risk of harm from dizziness

18   [and] risk of loss of consciousness," and that he was limited in his ability to speak

19   due to "severe voice change and pharyngeal restriction with the dyspnea"; Dr.

20   Weaver explained that Plaintiff's  "dyspnea increased with vocal communication"

ORDER - 21

and he opined Plaintiff had "obvious limitations to ability to call commands at an appropriate volume due to the hoarseness of voice." Tr. 547-48.  In December 2018, Dr. Weaver indicated Plaintiff's severe persistent asthma prevented him from engaging in any substantial gainful activity and that he had limitations in standing, walking, and activities of daily living due to "limited [oxygen] capacity and early fatigue." Tr. 601.  In April 2019, Dr. Weaver opined Plaintiff's prognosis was "complete disability [secondary to] pulmonary disease," that his symptoms were exacerbated with exertion, and that he would likely miss more than four workdays a month due to severe pulmonary limitation and chronic pulmonary disease.  Tr. 710.

There are also two opinions by Mr. Nielson in the record, which the ALJ attributed to Dr. Weaver; records show they are both providers at Dr. Weaver's clinic, however, and Dr. Weaver indicated he adopted the August 2018 opinion. Tr. 20-21, 597; *see, e.g.*, Tr. 508.  In June 2018, Mr. Nielson completed a physical ability assessment on behalf of Plaintiff's private disability insurance company. Tr. 342-44.  He indicated Plaintiff could sit and stand more than five and a half hours in a day, walk or run zero to two and a half hours in a day, and that he could frequently lift 10 pounds and occasionally lift 20 or more pounds; and he opined that "significant increased aerobic activity causes severe bronchospasms and cough." Tr. 342-43.  Mr. Nielson also opined Plaintiff was restricted to

ORDER - 22

intermittent lifting and carrying and explained that "any increase in activity increases pulmonary compromise." Tr. 344.   In August 2018, Mr. Nielson opined Plaintiff was limited lifting and carrying less than 10 pounds and standing and walking less than two hours on an eight-hour workday secondary to "severe dyspnea, obvious shortness of breath with communication and short distance ambulation." Tr. 590.

The ALJ found all of Dr. Weaver's opinions unpersuasive because they were inconsistent with one another at times and with the overall medical record, including objective findings, and because Dr. Weaver did not offer sufficient rationale to support the recommended limitations. Tr. 21. Supportability and consistency are the most important factors an ALJ must consider when determining how persuasive a medical opinion is. 20 C.F.R. § 404.1520c(b)(2). The more relevant objective evidence and supporting explanations that support a medical opinion, and the more consistent an opinion is with the evidence from other sources, the more persuasive the medical opinion is. 20 C.F.R. § 404.1520c(c)(1)-(2).

Here, the ALJ summarized multiple medical opinions by Plaintiff's treating providers and concluded they were unsupported and inconsistent with each other and the record as a whole. *See* Tr. 20-21. While the ALJ references the factors required by the regulations, she provides limited to no analysis of how the opinions

ORDER - 23

1    are inconsistent with each other or the record as a whole, or what objective

2    findings, if any, the opinions are inconsistent with.  *See* Tr. 20-21.  Further, more

3    than one of the providers' opinions restrict Plaintiff to sedentary or less than

4    sedentary limitations, and the ALJ does not explain how or why these functional

5    limitations are inconsistent with the record as a whole, the other opinions, or the

6    objective evidence.  *See* Tr. 590, 601.  Without the ALJ offering more than her

7    stated conclusions, the Court is unable to meaningfully review whether the ALJ's

8    interpretation of the evidence, rather than the opinions of Dr. Weaver and Mr.

9    Neilson, is rational.  *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir.

10   2015); *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (requiring the ALJ

11   to identify the evidence supporting the found conflict to permit the Court to

12   meaningfully review the ALJ's finding); *Reddick v. Chater*, 157 F.3d 715, 725 (9th

13   Cir. 1998) ("The ALJ must do more than offer his conclusions.  He must set forth

14   his own interpretations and explain why they, rather than the doctors' [opinions]

15   are correct.").

16       As this case is being remanded for reconsideration of Plaintiff' symptom

17   claims and to perform the sequential analysis anew, the ALJ shall also carefully

18   reconsider *all* medical opinions in the record, using the factors required by the

19   regulations.  The ALJ is to incorporate the limitations into the RFC or give reasons

20   supported by substantial evidence to reject the opinion.

ORDER - 24

**D. Step Five**

Plaintiff contends he is limited to sedentary work and thus disabled under the Medical-Vocational Guidelines at step five of the sequential evaluation, as the vocational expert only testified to transferable skills to the light level; and that the ALJ erred by relying on an incomplete hypothetical to the VE that did not include several of Plaintiff's limitations.  ECF No. 17 at 20-21.  As the case is being remanded to reconsider Plaintiff's symptom claims and the medical opinion evidence, and the ALJ has been instructed to perform the five-step analysis anew, upon remand the ALJ is also instructed to reconsider the step five analysis, including taking testimony from a vocational expert.

**E. Remedy**

Plaintiff urges this Court to remand for an immediate award of benefits. ECF No. 17 at 20.

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)). When the Court reverses an ALJ's decision for error, the Court "ordinarily must remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the proper course, except in rare circumstances, is to remand to the agency for

ORDER - 25

additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).  However, in a number of Social Security cases, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met.  *Garrison*, 759 F.3d at 1020 (citations omitted).  Under the credit-as-true rule, the Court will remand for an award of benefits when: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.  *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017).  Even when the three prongs have been satisfied, the Court will not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled."  *Garrison*, 759 F.3d at 1021.

Here, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated.  The Court finds that further proceedings are necessary for the ALJ to reevaluate Plaintiff's symptoms claims, reconsider the medical evidence, including conflicting medical opinion

evidence, and perform the five-step sequential evaluation anew.  For this reason, the Court remands this case for further administrative proceedings.

On remand, the ALJ shall conduct anew the five-step disability analysis, including taking the testimony of a vocational expert, and issue a new decision. The ALJ must rely on clear and convincing reasons to reject Plaintiff's symptom reports or include the reported limitations in the RFC.  The ALJ is also instructed to reconsider the medical evidence of record, being mindful to consider all of the medical opinions for the period at issue.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and not free of harmful legal error.  Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Kilolo Kijakazi as Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 17**, is **GRANTED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 22**, is **DENIED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

ORDER - 27

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED September 27, 2022

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 28